UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)



CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

September 8, 2025

LETTER TO COUNSEL

    RE:    *Tallie G. v. Bisignano, Commissioner of the Social Security Administration*[1]
            Civil Case No. GLS-24-2143

Dear Counsel:

    Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Tallie G. and the Social Security Administration. (ECF Nos. 11, "Motion", 14, "Opposition"). The Plaintiff has also filed a reply brief. (ECF No. 18, "Reply"). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2025).

    The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

**I.     BACKGROUND**

    On November 16, 2020, Plaintiff filed an application for supplemental security income benefits ("SSI"). (Tr. 18). In the application, the Plaintiff alleges that his disability began on May 5, 2020. (*Id.*). The claim was initially denied on September 17, 2021, and upon reconsideration, denied again on September 22, 2022. (*Id.* at 98, 110). On October 5, 2022, Plaintiff filed a written request for a hearing, which was granted. (*Id.* at 113). A telephone hearing was conducted on March 1, 2023 by an Administrative Law Judge ("ALJ"). (*Id.* at 34). On October 25, 2023, the ALJ found that the Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 15–28).

---

[1] On July 25, 2024, Plaintiff filed his case against Martin O'Malley, the then-Commissioner of the Social Security Administration. (ECF No. 1). On May 6, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Accordingly, consistent with Fed. R. Civ. P. 25(d), Commissioner Bisignano has been substituted as the Defendant in this case.

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 2

On June 3, 2024, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated October 25, 2023 became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. § 422.210(a).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a). *See, e.g., Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179–80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 3

### A.  Steps One through Four

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 20–28). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 16, 2020, the date of Plaintiff's application for supplemental security income. (*Id.* at 20). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: leg amputation (with phantom pain) and fractures of a lower limb. (*Id.* at 20–22). The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (*Id.* at 22). Taking into account Plaintiff's severe impairments, the ALJ next assessed the Plaintiff's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except: [Plaintiff] is frequently able to climb ramps or stairs and occasionally able to climb ladders, ropes, or scaffolds. He is frequently able to balance and occasionally able to stoop, kneel, crouch, or crawl. He must avoid work at unprotected heights or around dangerous moving machinery (i.e. Fork Lifts, etc.).

(*Id.* at 22–26). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id.* at 27).

### B.  The Hearing

Before making a finding regarding step five, the ALJ conducted a hearing. (Tr. 71–78). At that hearing, a vocational expert ("VE") testified, relying upon "The Dictionary of Occupational Titles" and her own experience as a vocational rehabilitation counselor. The VE identified the Plaintiff's past relevant work: a Metal Products Fabricator/Assembler and Delivery Route Driver. (*Id.* at 72). The ALJ asked the VE whether a hypothetical individual with the same age, education, and work experience as the Plaintiff, with his RFC, would be able to perform the past relevant work. (*Id.*). The VE opined that the hypothetical individual would not be able to perform the past work. (*Id.*).

In addition, the ALJ asked the VE about the ability of a hypothetical claimant (with Plaintiff's characteristics) to perform light level work. The ALJ asked the VE whether other work exists that the hypothetical individual would be able to perform at the light level. (Tr. 72–73). The VE opined that the hypothetical individual could perform other light work existing in the national economy, e.g., as a Price Marker, Routing Clerk, and Cashier II. (*Id.* at 73). The ALJ also asked the VE about the ability of a hypothetical person (with Plaintiff's characteristics) to perform sedentary level work. The ALJ asked the VE whether there exists other work that the hypothetical individual would be able to perform at the sedentary level with the following additional limitations: occasionally able to climb ramps or stairs; never able to climb ladders, ropes, or scaffolds;

Case 1:24-cv-02143-GLS   Document 19   Filed 09/08/25   Page 4 of 8

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 4

occasionally able to balance; occasional use of the light lower extremity for pushing, pulling, or operation of foot controls; would need to avoid concentrated exposure to vibration; and would be able to use a cane or other handheld assistive device for ambulation to and from the workstation or work area. (*Id.* at 73). The VE opined that the hypothetical individual, provided that they could walk with ten pounds in their unoccupied arm periodically on an occasional basis, could perform other sedentary work existing in the national economy, e.g., as a Document Preparer, Sorter, and Electronics Inspector. (*Id.* at 73–74).

Moreover, the ALJ asked the VE about the hypothetical individual's ability to perform sedentary work as a Document Preparer, Sorter, and Electronics Inspector, but with the following additional limitations: being able to understand and carry out simple instructions and routine repetitive tasks; being able to apply common sense understanding to carry out detailed but uninvolved instructions; needing to avoid work requiring a high quota production rate pace, e.g., rapid assembly line work where coworkers are side by side and the work of one affects the others; perform work activities for up to two hours at a time, but then become distracted causing the individual to be off task and accommodated with normal breaks; occasionally able to change activities or work settings without it being disruptive; occasionally able to deal with changes in the routine work setting; and occasionally able to have interaction with the general public. (Tr. 74–75). The VE opined that the hypothetical individual would still be open to perform the three jobs as identified. (*Id.* at 75–76).

Then, the ALJ posed the same hypothetical to the VE but in relation to the light level jobs as previously identified: Price Marker, Routing Clerk, and Cashier II. (Tr. 76). The VE opined that the hypothetical individual would still be able to perform work as a Price Marker or Routing Clerk, but not as a Cashier II. (*Id.*). The VE identified a Mail Sorter, in a business rather than the post office, as a viable substitution. (*Id.*).

The ALJ again varied the hypothetical, asking about the individual's ability to perform sedentary work, but with the following modified limitation: use of a walker or crutches, instead of a cane, for ambulation to and from the workstation or the work area. (Tr. 76). The VE opined that the hypothetical individual with those limitations would not be able to perform any work, sedentary or otherwise. (*Id.*). Furthermore, the ALJ asked the VE in regard to the hypothetical individual's ability to be off-task. (*Id.* at 76–77). The VE opined that 10% would be the maximum percentage of time off-task allowed before the hypothetical individual would be precluded from employment. (*Id.* at 77). Finally, the ALJ asked the VE about an employer's tolerance for absenteeism. (*Id.* at 77). The VE opined that anything beyond one day per month absence would preclude the hypothetical individual from gainful employment. (*Id.*).

At step five, then, the ALJ ultimately determined that the Plaintiff was not disabled because he could perform work existing in significant numbers in the national economy, e.g., as a Price Marker, Routing Clerk, and Cashier II, as the jobs were actually and generally performed based on the vocational expert's testimony. (Tr. 27, 28).

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 5

### III. DISCUSSION

In requesting summary judgment, Plaintiff advances two arguments. First, that the ALJ failed to properly evaluate medical source opinions resulting in a RFC not based on substantial evidence or logical explanation. Specifically, Plaintiff submits that the ALJ erred by: (a) failing to properly analyze Drs. Reddy's and Nduaguba-Ezumba's medical source opinions using the "consistency" and "supportability" factors identified in the relevant regulation; (b) substituting and relying upon his own lay opinion rather than relying upon Dr. Calabrese's credible medical source opinion; and (c) failing to properly analyze Dr. Calabrese's medical source opinion by cherry-picking facts to manufacture support for the ALJ's conclusions. Second, that the ALJ failed to evaluate Plaintiff's subjective symptom testimony properly by ignoring evidence that supports the severity and persistence of Plaintiff's pain symptoms, and failing to consider the extent to which he can perform his daily activities. Plaintiff submits that this mischaracterization led to an RFC unsupported by substantial evidence or logic. (Motion, pp. 12–25).

In response, the SSA contends that substantial evidence supports the ALJ's RFC assessment and that the ALJ appropriately evaluated Plaintiff's subjective symptom testimony. (Opposition, pp. 6–22). In his Reply, Plaintiff maintains that the ALJ failed to properly analyze the medical source opinions and Plaintiff's subjective symptom testimony, leading to an erroneous RFC. (Reply, pp. 1–7).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument that the ALJ did not properly consider evidence related to the severity and persistence of his subjective symptom testimony. (Motion, pp. 20–25). Accordingly, I find remand appropriate, for the reasons set forth herein.

When evaluating a claimant's subjective statements about his impairments and symptoms, the ALJ must follow a two-step process. 20 C.F.R. § 416.929. First, the ALJ considers the objective medical evidence before him to determine whether the claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleges." *Id.* Second, if the ALJ finds a medically determinable impairment, then the ALJ evaluates the "intensity and persistence of [the claimant's] symptoms, such as pain" to determine "the extent to which [the] symptoms limit [the claimant's] capacity for work." *Id.* At the second step, the ALJ "asses[es] the credibility of the claimant's statements about the symptoms and their functional effects." *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018); 20 C.F.R. § 416.929(c). In doing so, the ALJ must "consider all of the available evidence from . . . medical sources and nonmedical sources" related to how claimant's symptoms affect him. 20 C.F.R. § 416.929(c)(1). The ALJ "cannot base his credibility determination solely on objective medical evidence." *Ladda*, 749 F. App'x at 170–71 (4th Cir. 2018) (quoting SSR 96-7p *1); *see* 20 C.F.R. § 416.929(c)(1)–(3)(vii). Instead, the ALJ must consider all evidence before him and "build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (alterations and quotations omitted) (cleaned up) (further citation omitted). In doing so, the ALJ is not required to accept a claimant's allegations to the extent that such statements are inconsistent with the available evidence. *Craig*, 76 F.3d at 595. However, "when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 6

reject that contradictory evidence and *explain* his rational for so doing." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 519 (D. Md. 2002) (emphasis added).

The Court finds, *Woods v. Berryhill* instructive. 888 F.3d 686 (4th Cir. 2018), *superseded by rule on other grounds as recognized in Siders v. Comm'r of Soc. Sec. Admin.*, Civ. No. 21-2329, 2023 WL 4488259 (4th Cir. July 12, 2023). In *Woods*, the claimant suffered from inflammatory arthritis, osteoarthritis, and fibromyalgia. *Id.* at 690. The Fourth Circuit found that the ALJ erred in his credibility assessment when he concluded that the claimant's subjective testimony was inconsistent with her reported daily activities. *Id.* at 694–95. The court further explained that while the ALJ noted that the claimant could maintain personal hygiene, cook, and perform light household chores, the ALJ failed to consider the time it took the claimant to perform those household chores, that the claimant reported trouble dressing herself and taking baths, and that the claimant spent her entire day on the couch. *Id.* at 695. In holding that the ALJ erred, the Fourth Circuit emphasized that an ALJ cannot "consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them. *Id.* (emphasis in original).

Similarly in *Brown v. Commissioner of Social Security Administration supra*, the Fourth Circuit found that the ALJ erred in his credibility assessment because the ALJ failed to acknowledge the extent to which the claimant could perform activities of daily living or explain how those activities showed that the claimant could sustain a full-time job. 873 F.3d at 269–70.

Here, the ALJ found Plaintiff's testimony to be only partially credible after engaging in the two-step process. At the first step, the ALJ considered the objective medical evidence before him and found that Plaintiff's impairments were capable of causing Plaintiff's symptoms. (Tr. 23). At the second step, the ALJ opined that Plaintiff's statements about his symptoms, like pain, and their limits on his functionality were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 23). When assessing Plaintiff's credibility and considering the evidence, then, the ALJ erred in two ways.

First, the ALJ found the Plaintiff's testimony "inconsistent with his claim that he is disabled" because the "claimant's admitted daily activities and abilities belie a finding of disability." (Tr. 24). The ALJ further opined that "there are indications in the record that [Plaintiff] is more capable than he alleges." (*Id.*). The ALJ acknowledges that Plaintiff testified at the hearing that he has limitations on his ability to work and take care of himself, and that he requires help with some daily activities (mobilizing and personal care). (*Id.* at 23). The ALJ failed to explain how, despite these limitations, the Plaintiff could sustain full-time employment. (*Id.* at 23–24). For example, Plaintiff testifies in March 2023 that his mother was his "caretaker" and that he had to move back in with her in November 2020 because of his pain. (*Id.* at 56, 63). Plaintiff explained that his mother was responsible for getting him to appointments, helping him bathe and dress, shop for groceries, and cook. (*Id.* at 52, 56). In light of the aforementioned, absent from the ALJ's opinion is an explanation of how Plaintiff's limited ability to perform his daily activities without his mother's assistance factored into the ALJ's assessment of Plaintiff's credibility and ability to maintain full-time employment. In addition, while the ALJ cites to the fact that in 2022, Plaintiff "desir[ed] to resume high impact recreational activities" in support of his credibility assessment, the ALJ fails to explain how a "desire" is an indication of Plaintiff's ability to do so. (*Id.* at 25).

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 7

Moreover, the ALJ fails to logically and clearly explain how: (a) Plaintiff's ability to talk to people over the phone and by video; (b) go to the doctor two to four times a month; and (c) shop in stores, pay his bills, and count change, conflict with Plaintiff's subjective testimony about his limitations. (*Id.* at 24). Furthermore, the ALJ fails to explain how these activities support his conclusion that Plaintiff could sustain full-time, 8-hour-per-day, employment (*Id.* at 24). Put another way, the ALJ fails to explain how performing these daily activities shows that Plaintiff can maintain full-time employment despite his limitations. *See, e.g.*, *Jamie B. v. Bisignano*, Civ. No. DRM 24-1948, 2025 WL 2021721, at *4 (D. Md. July 18, 2025) ("[A]bsent a more detailed explanation by the ALJ in this case, it is unclear how the performance of any of these activities contradicts Plaintiff's subjective complaints of pain."). Without additional explanation regarding the extent to which Plaintiff can perform these daily activities and how that shows Plaintiff can maintain full-time employment, the Court cannot conduct a meaningful review of the ALJ's decision. *See Janice M. v. Kijakazi*, Civ. No. BAH 21-1715, 2022 WL 4120790, at *5 (D. Md. Sept. 9, 2022) ("Absent additional explanation of these activities and a more detailed discussion of why their performance is inconsistent with Plaintiff's reports of debilitating pain, I cannot find that the ALJ's decision is supported by substantial evidence.") *see also Arakas v. Commissioner, SSA*, 983 F.3d 83, 100 (4th Cir. 2020) (finding that an ALJ's failure to explain how claimant's daily activities showed that he could persist through an eight-hour workday required remand).

Second, although in his opinion the ALJ does, at times, offer some explanation of how he evaluated some of Plaintiff's statements, there are other portions of his decision where it is difficult to discern what evidence the ALJ believes supports his findings that Plaintiff's statements are not credible. (Tr. 24–26). For example, reviewing the ALJ's Opinion, the Court finds that some paragraphs include detailed citations to the medical records, where other paragraphs do not. (*Id.*). While it is true that the ALJ summarizes a number of Plaintiff's medical records, the ALJ does not fully explain how these records conflict with Plaintiff's testimony regarding his limitations, nor does the ALJ clearly explain how such inconsistencies led the ALJ to only partially credit Plaintiff's statements. (*Id.* at 24–25). Accordingly, it is not entirely clear to the Court what evidence the ALJ is relying upon to support his credibility assessment of Plaintiff's subjective testimony, and ultimately to support his RFC determination.

In sum, by failing to fully explain how the evidence supports all of his findings related to Plaintiff's credibility, the ALJ fails to create a logical bridge between his decision to partially credit Plaintiff's testimony and the evidence in the record—thus precluding meaningful judicial review. *Knight v. Astrue*, Civ. No. PWG 09-1803, 2011 WL 1298104, at *4 (D. Md. Mar. 31, 2011) ("When faced with evidence in the record contradicting his or her conclusion, an ALJ must address that contradictory evidence and explain his rationale for rejecting it."); *see Monroe*, 826 F.3d at 189 (remanding when the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion." (quoting *Clifford*, 227 F.3d at 872)); *see also George K. v. Kijakazi*, Civ. No. GLS 21-1223, 2022 WL 3134428, at *6 (D. Md. Aug. 5, 2022) (remand required where ALJ failed to build an "accurate and logical bridge" between the evidence of record, claimant's statements, and his conclusion).

*Tallie G. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-24-02143
September 8, 2025
Page 8

On remand, the ALJ should more clearly articulate *all* relevant evidence as it applies to weighing Plaintiff's subjective symptoms testimony. Because this case is being remanded, I will not address Plaintiff's arguments regarding the credibility assessment of the medical source opinions.

## IV.  CONCLUSION

For the reasons set forth above, both parties' summary judgment motions, (ECF Nos. 11, 14), are **DENIED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge